# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 50341 | **DATE** | 1/18/2013 |
| **CASE TITLE** | Mississippi Valley Livestock, Inc. v. J & R Farms, et al. | | |

**DOCKET ENTRY TEXT:**

The judgment of the bankruptcy court is affirmed. This case is closed.

■ [ For further details see text below.]

Docketing to mail notices.

---

Appellant, Stephen G. Balsley (the "Trustee") in his capacity as Chapter 7 Trustee for Mississippi Valley Livestock, Inc. (the "Debtor"), appeals an order of the bankruptcy court granting summary judgment in favor of the appellee, J & R Farms ("J & R"), finding that payments from the Debtor to J & R in the 90 day period proceeding the Debtor's involuntary bankruptcy filing could not be avoided by the Trustee. The bankruptcy court found that the Debtor made the payments in accordance with a bailee-like arrangement where J & R would turn over property to the Debtor which the Debtor would sell and return all of the proceeds to J & R. In this appeal, the Trustee argues that, because the Debtor deposited the funds from the sale of J & R's property into its general business fund, the Debtor exercised sufficient control over the property that the transfers can be avoided and the bankruptcy court erred in finding otherwise. For the reasons which follow, the bankruptcy court's order entering summary judgment is affirmed.

## I. BACKGROUND

The Debtor was in the business of buying livestock at market and selling that livestock to slaughterhouses. J & R conducted the same kind of business, as well as other business ventures not relevant here. J & R and the Debtor had two business relationships, both of which existed by virtue of oral agreements. In the first, J & R functioned as an "order buyer" for the Debtor. As an order buyer, J & R would purchase livestock for the Debtor from sales barns, which the Debtor would then sell to meat processors. Under their agreement, J & R was supposed to receive a 50% commission for any profit which the Debtor realized from the cattle J & R purchased as an order buyer and cover 50% of any loss. No commission was ever paid to J & R under this agreement, and J & R has made an unsecured claim in the bankruptcy proceeding for those unpaid commissions.

It is the second relationship, however, that is the subject of this appeal. Sometime in late 2006, J & R had some kind of disagreement with the Swift[1] processing facility in Grand Island, Nebraska, and was no longer permitted to do business directly with Swift. Accordingly, the Debtor agreed that it would sell J & R's livestock, along with the Debtor's own livestock, to Swift under its name and then pass the proceeds of the sale of J & R's livestock back to J & R. Swift paid for all of the cattle from the Debtor in checks made out to the Debtor without differentiating between those cattle that came from the Debtor and those that came from J & R. Debtor would then deposit those checks into its general business fund and write checks to J & R for the value of its cattle. From the record, it appears Debtor was somewhat slow in remitting the checks to J & R for the sales, often requiring

several written demands for payment from J & R, but the record does not show that Debtor ever used those funds for any other purpose. In the 90 day period prior to the Debtor entering involuntary bankruptcy, Debtor remitted seven checks totaling $862,747.31 (the "Transfer") to J & R based on the second relationship.

Following the filing of the bankruptcy proceeding, the Trustee began an adversary proceeding against J & R to avoid those payments pursuant to sections 547, 548, and 550 of the Bankruptcy Code. J & R filed a motion for summary judgment, arguing that the Debtor never had an equitable title or interest in J & R's cattle or the proceeds from their sale, thus the bankruptcy estate could not include the property under section 541 of the Bankruptcy Code. In the alternative, J & R argued that even if the Debtor had an interest in the proceeds, it was only as the trustee of a constructive or resulting trust with J & R as the beneficiary. The Trustee opposed J & R's motion, arguing that the Debtor had an interest in the proceeds because it deposited the money directly into its general business fund and thus held complete control over what was done with the money. Furthermore, the Trustee argued that no constructive or resulting trust was created in J & R's favor. The bankruptcy court found that the Debtor never had an equitable interest in the cattle or proceeds and functioned essentially as a bailee for J & R's property, accordingly it granted J & R's motion without addressing the alternative arguments. The bankruptcy court also found, in the alternative, that the "earmarking" doctrine applied to the proceeds, providing another justification for its grant of summary judgment.

## II. ANALYSIS

### A. Standard of Review

"As a conclusion of law, a grant of summary judgment by the bankruptcy court is . . . reviewed de novo." Collins v. Comdisco Inc., No. 05 C 2894, 2007 WL 952021, at *2 (N.D. Ill. Mar. 26, 2007). A grant of summary judgment should be affirmed "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Hemsworth, 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Id. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Id. The party need not meet, in the court's eyes, the preponderance of the evidence standard, but must still provide more than a "mere scintilla" of evidence to show that there is a genuine issue of material fact. See Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co., 600 F.3d 878, 882 (7th Cir. 2010).

### B. The Transfer

In this case, the facts, as set out above, are largely uncontested, instead the parties contest what effect those facts have on the legal rights of the Debtor and J & R. The Trustee argues at length that the Debtor had an interest in the Transfer which can be avoided under sections 547 or 548 because the Debtor had complete control over the disposition of the funds by placing them in its general business account. J & R argues, though, that the definition of an interest in property, although broadly defined in the Bankruptcy Code as "all legal or equitable interests of the debtor in property," 11 U.S.C. § 541(a)(1), is limited by the application of § 541(d). The Trustee does not engage this argument in his otherwise thorough reply brief. Nevertheless, § 541(d) restricts the inclusion of property in the estate which the Debtor has "legal title" to but lacks "equitable title." See Beiger v. I.R.S., 496 U.S. 53, 59 (1990) (noting that property over which the debtor is a trustee for the benefit of another does not enter the debtor's estate due to § 541(d)).

Legal and equitable title are not defined in the Bankruptcy Code, and are thus left up to state law. See Belisle v. Plunkett, 877 F.2d 512, 514-15 (7th Cir. 1989). However, the bankruptcy court found that the uncontested facts of this case establish that the Debtor held J & R's property in bailment. This court agrees. See Am. Ambassador Cas. Co. v. Jackson, 295 Ill. App. 3d 485, 490 (1998) ("A bailment is the delivery of property

for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it." (quotation marks omitted)). In this case, the parties agree that J & R delivered its cattle to the Debtor, according to their agreement, for the purpose of converting the property to cash by sale to Swift and then the Debtor was to return the proceeds to J & R. The principal of the Debtor and J & R both acknowledged that the Debtor had no ownership rights to the cattle and that their agreement was designed to have the Debtor sell the cattle under its name followed by a full remittance of the sale proceeds. The Trustee only points to the fact that the Debtor deposited the funds in its general business funds to defeat the possibility of a bailment. However, numerous courts have found that where the parties express an intent to create a bailment, commingling of funds is insufficient to defeat the existence of a bailment. See, e.g., In re: Computrex, Inc., 403 F.3d 807, 812 (6th Cir. 2005) ("This evidences, the Trustee continues, that the Debtor exercised sufficient control and dominion over the funds to establish that the funds constituted part of the Debtor's estate. The fact that the Payment Agreement did not explicitly prohibit the Debtor from commingling its clients' funds, and the fact that the Debtor did in fact commingle its clients' funds, does not establish that the funds were part of the Debtor's estate. The Payment Agreement indicates that the funds the Debtor received were to be passed on to pay its clients' carriers. The Debtor here is in essentially the same position as a bailee . . . . The fact that a bailee, which has a possessory interest in the property entrusted to him, but no legal or equitable interest, may commingle the funds his clients entrust to him does not give the bailee any property interest in the funds."); Fed. Home Loan Mortg. Corp. v. Fed. Deposit Ins. Corp., Civ.A.No. 85-39, 1985 WL 17367, at *4 (E.D. Ky. May 17, 1985) ("Plaintiff correctly states that the comingling [sic] of deposited funds with those of the bank is not per se fatal to a characterization of the deposit as a special one . . . a bailment relationship may still be created under the facts and circumstances, rather than the normal debtor-creditor relationship. These cases can be readily distinguished from the case sub judice since there is . . . no[t] a clear showing that a bailment was contemplated by the parties." (citation omitted)); B. A. Ballou & Co. v. Citytrust, 591 A.2d 126, 129-30 (Conn. 1991) ("We agree that the commingling of fungible goods alone does not defeat a bailment when the bailor specifically intended to retain ownership of a known share of the commingled goods."). Accordingly, because the record discloses that both parties to the agreement acknowledged that they intended to create what amounts to a bailment, the commingling itself is insufficient to defeat that intention.

"[U]nder the law of bailment . . . a bailee acquires only a possessory interest[] in the property pledged, while the bailor retains legal and equitable title." S.E.C. v. Credit Bancorp, Ltd., 290 F.3d 80, 90 (2d Cir. 2002) (emphasis added); see also B & Y Heavy Movers, Inc. v. Fluor Constructors, Inc., 211 Ill. App. 3d 975, 981-82 (1991) (holding that title remains with the bailor). Accordingly, because the Debtor never had a legal or equitable interest in the cattle or the proceeds from their sale under the uncontested facts of this case, the pre-petition transfer of that property cannot be avoided. Indeed, even had the bailment provided the Debtor with some legal interest in the cattle or the proceeds, § 541(d) would prevent the Trustee from avoiding the transfer.

This result is supported by two cases the court finds persuasive. First, in Belisle, the Seventh Circuit, in analyzing the interplay between § 541(d) and another avoidance section not relevant here, found that one of the purposes of § 541(d) was to give "the trustee no greater rights than the judgment creditor would have" had under state law. 877 F.2d at 515 (emphasis omitted).

> If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors. Whether or not we say that the debtor holds the ring in "constructive trust" for the owner is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them.

Id. Likewise, here, if the Debtor had retained J & R's cattle or the proceeds therefrom, which the parties agreed

it had no right to do, it would have stolen the property and J & R's rights would trump those of any of the Debtor's creditors in recapturing those proceeds under state law.

Second, and even more persuasive, is In re Zwagerman, 115 B.R. 540 (Bankr. W.D. Mich. 1990), which addressed almost identical facts to this case except that the debtor in that case first fed and fattened the defendant's cattle before selling them. Id. at 547. There, as here, the trustee sought to avoid the transfer of funds for the 90 days immediately preceding the bankruptcy filing. Id. at 557-58. The court found that a bailment existed which prevented the debtor from ever having gained title to the cattle or the proceeds from the sale and thus the cattle and proceeds were never part of the estate and the transfers could not be avoided. See id. at 559 ("The court concludes that at the time of the filing of the petition for an order for relief, all cattle on hand were cattle belonging to Bradley or purchased with proceeds from the sale of Bradley's cattle. Also, the court finds that all monies paid by Zwagerman to Bradley during the period commencing 90 days prior to the date of the filing of the petition were from funds received from the sale of Bradley's cattle and were not property that would have otherwise become a part of the Debtor's estate.").

Accordingly, because the uncontested facts in this case show that the Debtor only held the property as bailee for J & R, Debtor had no equitable or legal interest in the property. Without a legal or equitable interest in the property, the property could not properly be made part of the estate, see 11 U.S.C § 541(a)(1), and the bankruptcy court correctly granted summary judgment in favor of J & R on the Trustee's request to avoid the transfer. Having determined that the bankruptcy court correctly granted summary judgment on this ground, the court need not address whether the earmarking doctrine, or the parties' arguments concerning constructive and resulting trusts, provide additional bases to affirm.

### III. CONCLUSION

The bankruptcy court correctly granted summary judgment to J & R based on the uncontested facts. Accordingly, the court's order is affirmed.

---

1. The parties differ in what the official name of this company was, with the Trustee calling it Swift-Con Agra and J & R calling it JBS Swift Plant. Nevertheless, both parties appear to be referring to the same meat processing plant in Grand Island by the shorthand of Swift, so the court will accept this convention and refer to that plant as "Swift" throughout the opinion.